**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

| | | |
|---|---|---|
| **TERRENCE TERRELL LINDSEY,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **Civil Action No. 4:24-cv-01212-O-BP** |
| | § | |
| **THE STATE OF TEXAS,** *et al.*, | § | |
| | § | |
| **Defendants.** | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

On December 9, 2024, *pro se* Plaintiff Terrence Terrell Lindsey filed a Complaint alleging a variety of claims against more than sixty Defendants. ECF No. 1. On December 30, 2024, the Court granted Lindsey permission to proceed *in forma pauperis* ("IFP"). ECF No. 7. By Order dated January 30, 2025, the Court found that "further information would be helpful to the Court in adjudicating this case," and ordered Lindsey to complete a Questionnaire. ECF No. 11. Lindsey completed that Questionnaire on March 3, 2025. ECF No. 12. Thereafter, on July 22, 2025, the Court ordered Lindsey to file an Amended Complaint. ECF No. 13. Lindsey did so on August 5, 2025. ECF No. 14. His Amended Complaint removed all but fourteen named Defendants. *Id.* After reviewing Lindsey's Complaint and the applicable legal authorities, the undersigned **RECOMEMNDS** that Chief United States District Judge Reed O'Connor **DISMISS** this suit pursuant to 28 U.S.C. § 1915(e)(2).

**I.      BACKGROUND**

In February 2022, a Dallas police officer pulled Lindsey over. For some reason, the situation escalated, and the officer, Defendant Jose Bernal, allegedly brandished a firearm. ECF No. 14 at 6-7. After approximately thirty minutes, and the arrival of reinforcements, Lindsey exited

his vehicle. *See id.* The Dallas police officers then allegedly towed the vehicle and took Lindsey into custody. *Id.* at 8. Less than a week later, another Dallas police officer again pulled Lindsey over. *Id.* at 9. This time, the officer, Defendant Gavino O. Rongel, allegedly reached into Lindsey's vehicle's driver-side window, unlocked the vehicle, and pulled Lindsey out. *Id.* at 10. Lindsey alleges that the officer physically groped him and unlawfully searched him and his vehicle. *Id.*

That May, Lindsey "addressed" the Dallas Police oversight board in some form. *See* ECF No. 12 at 7. He alleges that following apprising the board about the behavior of the officer in the first February traffic stop, various Dallas city officials allegedly conspired to tamper with and conceal evidence, including the original body camera footage of Lindsey's arrest. *See id.* at 7-8.

Some two years later, in June 2024, Lindsey was pulled over by a North Richland Hills police officer, Defendant Hailie Strong. *Id.* at 11. Strong approached Lindsey's car door and began asking questions, and she eventually called for backup *Id.* at 11-12. After Defendant Nector Escalante arrived, Lindsey conversed with him for at least twenty minutes with the driver-side window rolled down. *Id.* After their conversation, Strong approached the vehicle and allegedly accused Lindsey of using marijuana. *Id.* Strong and Escalante proceeded to remove Lindsey from his vehicle and search both the car and his person. *Id.* They also removed Lindsey's firearm from his person. *Id.* The officers then arrested Lindsey and took him to Tarrant County jail. *See id.*; ECF No. 12 at 11. Lindsey alleges that once there, he was "forced to strip naked, again searched, his clothes [were] taken[,] and [he] was deprived of proper nutrition." ECR No. 14 at 11-12; ECF No. 12 at 12. He also alleges that representatives of Defendant Tarrant County "forced [him] to take an injection of an unknown substance against his will." ECF No. 14 at 11-2; ECF No. 12 at 12. Finally, he also asserts his Fifth and Sixth Amendment rights were violated. ECF No. 12 at 11.

That December, Lindsey brought the present suit. ECF No. 1. In his Amended Complaint, Lindsey sues the State of Texas, Texas Attorney General ("AG") Warren Kenneth Paxton Jr., Dallas Mayor Eric Johnson, the City of Dallas, the Dallas Marshal's Office Association, Tarrant County, Tarrant County Criminal Court 7 (which the Court construes as Tarrant County Criminal Court No. 7), North Richland Hills (which the Court construes as the City of North Richland Hills), Hailie Strong, Nestor Escalante, Jose Bernal, Gavino O. Rongel, Berlinda Murray, and Maria C. Martinez, a deputy clerk of a Dallas municipal court. *Id.* at 1-2.

## II.   LEGAL STANDARD

Title 28 U.S.C. **§** 1915 governs cases where claimants proceed IFP. Under § 1915(e)(2), the Court shall, *sua sponte*, dismiss a case proceeding IFP if the Court determines that it is frivolous, fails to state a claim on which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B). To aid the Court in determining whether it should dismiss an IFP complaint, the Fifth Circuit has approved the use of questionnaires. *Spears v. McCotter*, 766 F.2d 179, 181-82 (5th Cir. 1985). A plaintiff's responses to such a questionnaire become part of the pleadings. *Eason v. Holt*, 73 F.3d 600, 602 (5th Cir. 1996).

A complaint is frivolous if it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). "A complaint lacks an arguable basis in law if it is based on an 'indisputably meritless legal theory.'" *McCollum v. Lewis*, 852 F. App'x 117, 121 (5th Cir. 2021) (quoting *Neitzke*, 490 U.S. at 327).

Further, to state a viable claim for relief, Federal Rule of Civil Procedure 8 requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(1). To be entitled to relief, the complaint must plead "enough facts to state a claim to relief

that is plausible on its face" with sufficient specificity to "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). This requirement demands "more than labels and conclusions, [or] a formulaic recitation of the elements of a cause of action." *Id.* at 555. A complaint must "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (quoting *Bell Atl. Corp.*, 550 U.S. at 555).

Courts shall "liberally construe pleadings filed by *pro se* litigants." *Torres v. Goldstein*, No. 3:24-cv-1843-B-BK, 2024 WL 4530027, at *2 (N.D. Tex. Sept. 24, 2024), *rec. accepted*, No. 3:24-cv-1843-B-BK, 2024 WL 4530137 (N.D. Tex. Oct. 17, 2024). However, a court is "not at liberty to create a cause of action where there is none." *Cledera v. United States*, 834 F. App'x 969, 972 (5th Cir. 2021). Generally speaking, "a *pro se* litigant should be offered an opportunity to amend his complaint before it is dismissed." *Brewster v. Dretke*, 587 F.3d 764, 767-68 (5th Cir. 2009). However, courts are not required to grant leave to amend where "an amendment would be futile." *Cledera*, 834 F. App'x at 972. An incurable defect may arise when a complaint's facts are "not actionable as a matter of law." *Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002). In such situations, dismissal with prejudice is appropriate. *Schiller v. Physicians Res. Grp., Inc.*, 342 F.3d 563, 566 (5th Cir. 2003).

The Court may also appropriately dismiss an action without leave to amend if the Court finds that the plaintiff has alleged his best case. *Jones v. Greninger*, 188 F.3d 322, 327 (5th Cir. 1999). If the court "outline[s] in [its] opinion the deficiencies" of plaintiff's pleading and "plaintiff nevertheless cannot . . . amend to satisfy [the relevant pleading standard,] the court can then dismiss the complaint with the assurance that the plaintiff has been shown all the deference he is due." *Sims v. Tester*, No. 3:00-cv-0863-D, 2001 WL 627600, at *2-3 (N.D. Tex. Feb. 13, 2001).

III.   ANALYSIS

Lindsey's Amended Complaint alleges that Defendants "were negligent in their actions and/or omissions which caused [him] injury." ECF No. 14 at 14. These actions allegedly "caused injury in, but not limited to" the following ways: (1) failing to provide Lindsey his right to due process of law; (2) Lindsey's false imprisonment in violation of Article I, § 18 of the Texas Constitution; (3) the theft of Lindsey's property "for emolument;" (4) violation of 18 U.S.C. §§ 514, 1001, 241, 242, 912, 371, and 701; (5) entering false claims against Lindsey without proof of injury in violation of 31 U.S.C. § 3729(B)(4); and (6) "fail[ing] in duty and obligation to uphold, protect and defend both the State and United States of America Constitution[s], constituting breach of trust." *Id.* at 14-15.

Lindsey seeks to recover compensatory damages "in an amount in excess of One Hundred and Thirty-One Million Dollars," punitive damages, an unspecified "permanent injunction against Defendants," and the "return of Plaintiff's private property, chattels, and dismissal of all prior allegations and judgments." ECF No. 14 at 9.

A.   **The Eleventh Amendment bars Lindsey's claims against the State of Texas and the AG**.

First, the claims Lindsey brings against the State of Texas are barred. Under the Eleventh Amendment of the United States Constitution, states may not be sued in federal court unless they unequivocally consent to the suit or unless Congress, pursuant to a valid exercise of power, unequivocally expresses its intent to abrogate immunity. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 99-100 (1984); *see also* U.S. CONST. amend. XI. Likewise, Eleventh Amendment immunity extends to state officials if the relief sought would operate against the state. *Pennhurst*, 465 U.S. at 101. The AG is one such state official.

Although Lindsey does not specifically state in what capacity he sues the AG, he makes his claims against him as Attorney General of Texas, which is in his official capacity. Lindsey has stated no facts and made no claim against the AG in his individual capacity. To the extent he makes claims against the AG in his official capacity for damages, the Eleventh Amendment provides immunity.

There are three possible exceptions to Eleventh Amendment immunity: (1) for claims seeking injunctive or declaratory relief against a state official under *Ex Parte Young*, 209 U.S. 123 (1908); (2) a state's waiver or consent, *Idaho v. Coeur d'Alene Tribe*, 521 U.S. 261, 267 (1997); and (3) Congress's abrogation of the state's immunity through section 5 of the Fourteenth Amendment. *Bd. of Trs. of Univ. of Ala. v. Garrett*, 531 U.S. 356, 364 (2001).

*Young* permits "prospective injunctive relief to prevent a continuing violation of federal law" against state officers in their official capacities and does not allow damages or other retrospective relief. *Green v. Mansour*, 474 U.S. 64, 68 (1985). But here, it is far from clear what injunctive relief Lindsey seeks against the AG. He requests "permanent injunction against Defendants," but he states neither the form that injunction would take nor what "continuing violation of federal law" the AG is allegedly committing and to which the injunction would be directed. *See* ECF No. 14 at 19; *see generally* ECF Nos. 12, 14. To the extent Lindsey alleges certain constitutional violations by Dallas and North Richland Hills police officers, he fails to explain how the AG is conceivably involved. *See, e.g.*, ECF No. 14 at 6-14; *id.* at 16 (alleging *respondeat superior* liability); *but see Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) ("Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*."). Lindsey's allegations against the AG are insufficient to state a claim upon which relief, whether injunctive or otherwise, may be granted. *Id.*

6

At any rate, a party seeking an injunction must establish: (1) a substantial likelihood the party will prevail on the merits; (2) a substantial threat exists that irreparable harm will result if the injunction is not granted; (3) the threatened injury outweighs the threatened harm to the defendants; and (4) the granting of the preliminary injunction will not disserve the public interest. *Sugarbusters v. Brennan*, 177 F.3d 258, 265 (5th Cir. 1999). Relief should be granted only if the party seeking relief has clearly carried the burden of persuasion as to all four elements. *Black Fire Fighters Ass'n v. City of Dall.*, 905 F.2d 63, 65 (5th Cir. 1990). Here, Lindsey has failed to allege any facts that would support a claim for prospective injunctive relief against the AG, nor has he alleged facts that would meet the legal requirements for the Court to enter injunctive relief. Thus, the injunctive relief exception to Eleventh Amendment immunity under *Young* is unavailable to Lindsey.

Likewise, the other two exceptions are not applicable. Lindsey has not directed the Court to authority establishing that the state of Texas has waived immunity or consented to suit in this case, and the Court is aware of no such authority. Finally, Lindsey has not advanced any theory or directed the Court to any authority establishing that Congress has abrogated the state of Texas' immunity for any of the statutes for which Lindsey raises an actionable claim. *See also Baldwin v. Univ. of Tex. Med. Branch at Galveston*, 945 F. Supp. 1022, 1030 (S.D. Tex. 1996) ("Congress did not abrogate the states' Eleventh Amendment immunity by enacting 42 U.S.C. §§ 1981, 1982, and 1985."); *United States ex rel. Foulds v. Tex. Tech Univ.*, 171 F.3d 279, 294 (5th Cir. 1999) (the Eleventh Amendment bars 31 U.S.C. § 3729 claims against states).

Because "federal courts are without jurisdiction over suits against a state, a state agency, or a state official in his official capacity unless that state has waived its sovereign immunity or Congress has clearly abrogated it," *Gunn v. Minton*, 568 U.S. 251, 256 (2013) (cleaned up), and

7

Lindsey has failed to identify an exception to sovereign immunity that would allow his lawsuit against the State of Texas or the AG to proceed, the Court lacks subject matter jurisdiction over such claims. They should be dismissed without prejudice. *Warnock v. Pecos Cnty.*, 88 F.3d 341, 343 (5th Cir. 1996).

> **B.      Lindsey's claims against Tarrant County Criminal Court No. 7 must be dismissed because that court is a nonjural entity.**

Lindsey names Tarrant County Criminal Court 7 as a Defendant, which the Court construes as Tarrant County Criminal Court No. 7. But Lindsey cannot maintain an action against this court because it is not subject to a civil lawsuit. "It is well-established that a county court is a nonjural entity that is not subject to suit." *Perez v. Dallas Cnty. Cts.*, No. 3:20-cv-01761-L-BT, 2020 WL 7049159, at *2 (N.D. Tex. Oct. 27, 2020), *rec. accepted*, No. 3:20-cv-01761-L, 2020 WL 7047057 (N.D. Tex. Nov. 30, 2020); *see also Moore v. Crowley Cts.*, No. 3:07-cv-0962-M, 2007 WL 3071188, *2 n.1 (N.D. Tex. Oct. 22, 2007) (citing *Daniel v. Dallas Cnty. Comm'rs Ct.*, No. 3:01-cv-0072-P, 2001 WL 167923, at *1 (N.D. Tex. Jan. 19, 2001)). Because Tarrant County Criminal Court No. 7 is a nonjural entity, and because Lindsey has not pointed to any authority suggesting the state of Texas or another political subdivision has authorized it to be sued, Lindsey's claims against the court should be dismissed for failure to state a claim. *Perez*, 2020 WL 7049159, at *2; *see also Barrie v. Nueces Cnty. Dist. Att'y's Off.*, No. 18-40513, 2018 WL 5095824, at *3 (5th Cir. Oct. 17, 2018) (per curiam).

> **C.      Lindsey's claims under Title 18 of the United States Code are not actionable.**

Lindsey asserts that unspecified Defendants violated various provisions of Title 18 of the United States Code. But these statutes are part of the federal criminal code, and the law is settled that there is no private right of action for violations of criminal statutes. *E.g.*, *Williams v. Cintas*

*Corp.*, No. 3:07-cv-0561-M-BD, 2007 WL 1295802, at \*2 (N.D. Tex. Apr. 10, 2007), *rec. adopted*, No. 3:07-cv-0561-M-BD, 2007 WL 1300780 (N.D. Tex. May 2, 2007); *Back v. UTMB*, No. 6:15-cv-129, 2016 WL 9455135, at \*2 (W.D. Tex. Apr. 7, 2016) ("Courts have repeatedly held that violations of criminal statutes do not give rise to a private right of action."); *see also Moore v. Bunting*, No. 4:23-cv-291-SDJ-KPJ, 2023 WL 6457805, at \*2 (E.D. Tex. July 17, 2023), *rec. accepted*, No. 4:23-cv-291-SDJ-KPJ, 2023 WL 6447278 (E.D. Tex. Oct. 3, 2023) ("18 U.S.C. § 242 criminalizes the deprivation of rights under the color of law, and courts have unanimously held that [it] does not provide or contemplate a private right of action.").

In the body of Lindsey's Amended Complaint, he also alleges that Defendants violated the "1970 R.I.C.O. ACT." *See, e.g.*, ECF No. 14 at 6. Although Lindsey does not technically bring a RICO claim, *see id.* at 14-16, to the extent he attempts to, while it is true that 18 U.S.C. § 1964(c) creates a private right of action for a violation of § 1962, the statute only permits suit where "[a]ny person [is] injured in his business or property by reason of a violation of section 1962." 18 U.S.C. § 1962(c). Lindsey pleads no facts that would support a potential claim under this definition.

The Court should dismiss Lindsey's claims under Title 18 with prejudice.

**D.    Lindsey's claim under 31 U.S.C. § 3729(B)(4) does not exist, and Lindsey does not state a claim under the False Claims Act.**

Lindsey next asserts that Defendants "[e]nter[ed] false claims against [him] without proof of injury pursuant to **31 U.S.C. § 3729(B)(4); False Claims Act**." But this statutory subsection does not exist. ECF No. 14 at 15 (emphasis in original). Title 31 U.S.C. § 3729 has four subsections: (a), (b), (c), and (d), but not (B).

If the Court construes Lindsey's Amended Complaint to allege a violation of 31 U.S.C. § 3729(b)(4), that likewise is unavailing. This is because 31 U.S.C. § 3729(b)(4) is merely a

definition: "(4) the term 'material' means having a natural tendency to influence, or be capable of influencing, the payment or receipt of money or property." 31 U.S.C. § 3729(b)(4).

So it appears clear that Lindsey misnamed the statutory section he seeks to allege a violation of. However, the Court is unable to ascertain which part of 31 U.S.C. § 3729 Lindsey meant to name in its place. Perhaps Lindsey meant to allege a violation of subparagraph (B) of 31 U.S.C. § 3729(a)(1), which establishes liability for any person who "knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim." *Id.* § 3729(a)(1)(B). But Lindsey does not say as much. In the face of this silence, the Court turns to Lindsey's Amended Complaint for potential guidance.

Lindsey alleges that "Defendants STATE OF TEXAS, CITY OF DALLAS, MARIA C. MARTINEZ, BERLINDA MURRAY and JOSE BERNAL falsified an affidavit of injury under perjury in which the Plaintiff's name was misspelled," which then allegedly subjected Lindsey to "continuous[] harassment" and the issuance of "non judicial warrants . . . on postcards" and "internet warrants constituting defamation." ECF No. 14 at 8-9. He also alleges that "Defendants GAVINO O. RONGEL and the CITY OF DALLAS issued the Plaintiff fraudulent citations which failed to consist of the signature of a true judicial officer"—actions which allegedly resulted in the same kind of harassment and extrajudicial warrants he already alleged. *Id.* at 10-11. Next, after the traffic stop and arrest that Strong and Escalante executed, Lindsey alleges various Defendants "charged [him] for false claims under the statute of 'unlawful carry' in a joint venture to conspire against [his] human rights." *Id.* at 12. These same Defendants have also allegedly "continuously harassed [Lindsey] and threatened [him] by . . . non judicial warrants issued, lacking judicial signature and internet warrants constituting defamation." *Id.* at 13.

10

Liberally construed, it seems that Lindsey might have intended to allege violations of 31 U.S.C. § 3729(a)(1)(B) and § 3729(a)(1)(C) (establishing liability for a conspiracy to violate subparagraph (B)). However, even if this is the case, his Amended Complaint and Questionnaire Responses do not sufficiently plead a claim under the False Claims Act. This is because Lindsey's Amended Complaint does not satisfy Federal Rule of Civil Procedure 9(b). *United States ex rel. Doe v. Dow Chem. Co.*, 343 F.3d 325, 328 (5th Cir. 2003) ("Claims brought under the FCA [False Claims Act] must comply with Federal Rule of Civil Procedure 9(b), which requires pleading with particularity in cases alleging fraud."); *see also* Fed. R. Civ. P. 9(b). "At a minimum, Rule 9(b) requires that a plaintiff set forth the 'who, what, when, where, and how' of the alleged fraud." *Id.* (citing *United States ex rel. Thompson v. Columbia/HCA Healthcare Corp.*, 125 F.3d 899, 903 (5th Cir. 1997)).

Lindsey plainly does not satisfy this burden. For example, he does not explain what the alleged fraudulent falsifications in the affidavit of injury were, nor why the citations he received were fraudulent, nor why the alleged false claims were in fact false. *See generally* ECF No. 14; ECF No. 12. Because "[t]he time, place and contents of the false representations . . . and what [the person making the representations] obtained thereby' must be stated in a complaint alleging violation[s] of the FCA," a complaint that lacks these required details is properly dismissed. *See Dow Chem. Co.*, 343 F.3d at 329-30.

Beyond his unavailing factual allegations, Lindsey directs the Court to "Exhibit A through H[] for further proof of evidence of [his] allegations," which are documents he attached to his Amended Complaint. ECF No. 14 at 13. But although the Court finds several documents, none explains the fraud Lindsey alleges. These documents include copies of notifications of pre-trial hearing settings he received from a Dallas municipal court, a complaint before the municipal court

11

that affiant Berlinda Murray signed, various warrant notifications, and a traffic citation issued by

a North Richland Hills police officer. *See id.* at 38-57. But the Court can perceive nothing out of

the ordinary about these documents, much less why they allegedly demonstrate fraudulent activity.

And to the extent Lindsey's § 3729 claim against Maria C. Martinez, a deputy clerk of a Dallas

municipal court, is premised on her filing of any of the above documents, Martinez has immunity

from such a claim. "When a clerk of court files or refuses to file a document with the court, [s]he

is entitled to immunity, provided the acts complained of are within h[er] professional functions."

*Evans v. Suter*, No. H-07-1557, 2007 WL 1888308, at *3 (S.D. Tex. June 29, 2007), *aff'd*, 260 F.

App'x 726 (5th Cir. 2007).

The Court previously cautioned Lindsey that the Federal Rules require a short and plain

statement of his claims that demonstrate that he is entitled to relief, and the Court also offered him

an opportunity to provide greater factual clarity with a questionnaire. Under these circumstances,

and the Court's conclusion that Lindsey's Amended Complaint remains deficient, Lindsey's claim

under § 3729 should be dismissed.

### E.    Lindsey's claim for "breach of trust" should be dismissed because it is nonexistent.

Lindsey alleges that unspecified Defendants "failed in duty and obligation to uphold,

protect and defend both the State and United States of America Constitution[s], constituting breach

of trust." ECF No. 14 at 15. The Court construes this "breach of trust" terminology to refer to an

alleged breach in his confidence with the Government, and not a breach of a legal trust instrument,

since Lindsey's pleadings are entirely devoid of any cognizable reference to a legal trust.

The Court is aware of no private cause of action for a government's alleged breach of a

citizen's trust in the Government, nor has Lindsey identified any authority supporting as much.

Lindsey alleges that Dallas "Mayor Eric Johnson doesn't have a signed and valid oath of office on record at all, making him a private contractor an all [his] acts treason." ECF No. 12 at 8. But even if true that Mayor Johnson did not sign an oath of office, this fact alone does not create a cause of action, much less establish Lindsey's entitlement to relief. For his failure to even bring an extant cause of action, dismissal is warranted.

However, to the extent Lindsey attempts to bring a breach of contract claim against Defendants for their alleged breaches of their duties to uphold and defend the Texas and United States Constitutions, that attempt is also unsuccessful.

This potential claim certainly fails in part because Lindsey has not pleaded the elements of a breach of contract under Texas law, but it fails principally because "an 'oath' or 'affirmation' to uphold the Constitution is not a valid contract between a private individual and the official making the 'oath' or 'affirmation,' as there is no offer, acceptance, meeting of the minds, or execution or delivery of the contract between the individual and the official." *Bey v. Rosamond*, No. 4:21-cv-302-ALM-KPJ, 2022 WL 636728, at *3 (E.D. Tex. Feb. 25, 2022), *rec. accepted*, No. 4:21-cv-302-ALM-KPJ, 2022 WL 889394 (E.D. Tex. Mar. 25, 2022). Accordingly, the Court should dismiss Lindsey's claim for the Government's "breach of trust."

**F.      Lindsey's claim for theft is unavailing.**

Lindsey alleges that Defendants caused him injury via the "[t]heft of [his] property for emolument." ECF No. 14 at 14. Ostensibly, this allegation refers to the alleged "grand theft" perpetrated when Lindsey's vehicle was towed following his February 14, 2022 traffic stop, *id.* at 10, and the alleged incident where Lindsey's firearm was "stolen" by Strong and Escalante following Lindsey's June 29, 2024 traffic stop and arrest. *Id.* at 12; *see also* ECF No. 12 at 12

13

(following the February 9, 2022 traffic stop and arrest, Lindsey also alleges that a non-Defendant "h[eld] [his] private property for ransom for payment").

The Court should dismiss Lindsey's claims for several reasons. First, an allegation of criminal activity is not an actionable basis for a civil suit, and Lindsey may not enforce the criminal code in the civil court system. "Whether to prosecute and what charge to file or bring before a grand jury are decisions that generally rest in the prosecutor's discretion." *United States v. Batchelder*, 442 U.S. 114, 124 (1979).

Second, the applicable two-year statute of limitations bars any potential claim for conversion under Texas law following the traffic stops in February 2022 since Lindsey brought his suit in December 2024. *United States ex rel. Jackson v. Univ. of N. Tex.*, 673 F. App'x 384, 388 (5th Cir. 2016) (citing *In re Est. of Melchior*, 365 S.W.3d 794, 798 (Tex. App.—San Antonio 2012, pet. denied) ("The limitations period for conversion is two years, and [it] begins to run at the time of the unlawful taking."); *see also* Tex. Civ. Prac. & Rem. Code § 16.003(a). The same is true of any potential Fifth Amendment takings claim premised on these events. *See Heilman v. City of Beaumont*, 638 F. App'x 363, 366 (5th Cir. 2016) (a 42 U.S.C. § 1983 claim has a two-year statute of limitations in Texas).

Third, to the extent Lindsey intended to bring a conversion claim against Strong or Escalante following their removal of his firearm from his person upon placing him under arrest, not only does Lindsey fail to allege facts to support why that action was wrongful, but his pleadings contain nothing more than baseless allegations that any Defendant profited from taking possession of Lindsey's property. *See ITT Com. Fin. Corp. v. Bank of the W.*, 166 F.3d 295, 305 (5th Cir. 1999) ("Under Texas law, conversion is the wrongful exercise of dominion and control over another's property in violation of the property owner's rights."). Likewise, to the extent Lindsey

14

intended to bring a Fifth Amendment takings claim, his pleadings are bereft of any "alleged facts showing [his] property was taken for *public use* in contravention" of the Second Amendment or other "clearly established right." *Lucky Tunes #3, L.L.C. v. Smith*, 812 F. App'x 176, 183 (5th Cir. 2020) (emphasis added).

So, although Lindsey's pleadings assert that Strong and Escalante "stole[]" his firearm at the time of his arrest, ECF No. 14 at 12, and he makes a blanket allegation that "all other named defendants . . . are equally responsible pursuant to title 42 1986," ECF No. 12 at 10, he says no more on the subject. This is insufficient to state a claim—whether for conversion or for a constitutional violation under § 1983. When an individual is arrested, if he is carrying a firearm at the time of his arrest, officers will remove that firearm from him. *See United States v. Campbell*, 178 F.3d 345, 348-49 (5th Cir. 1999) (officers are "authorized to 'take such steps as [are] reasonably necessary to protect their personal safety and to maintain the status quo during the course of the stop'" (citing *United States v. Hensley*, 469 U.S. 221, 229 (1985)). This may be unconscionable to Lindsey, but it is not unconstitutional.

Lindsey may not sue for theft, and to the extent he attempts to sue Defendants for conversion or potential constitutional violations, his pleadings are factually deficient and his potential claims unavailing. For those reasons, the Court should dismiss them.

### G.       Lindsey's claim under the Texas Constitution is unavailable.

Lindsey brings a claim against Defendants under Article I, Section 18 of the Texas Constitution for their alleged false imprisonment of his person. ECF No. 14 at 14. Setting aside that Article I, Section 18 proscribes imprisonment for debt, and Lindsey fails to provide anything other than baseless factual allegations that that fate befell him, a plaintiff "cannot assert a private cause of action for alleged violations of the Texas Constitution." *Blakely v. Kelly*, No. 3:16-cv-

15

2801-K-BN, 2019 WL 2013808, at \*13 (N.D. Tex. Apr. 15, 2019), *rec. accepted*, No. 3:16-cv-2801-K-BN, 2019 WL 2008543 (N.D. Tex. May 7, 2019) (citing *City of Beaumont v. Bouillion*, 896 S.W.2d 143, 149 (Tex. 1995)); *see also* TEX. CONST. art. I, § 18.

There "is no private cause of action against a governmental entity or its officials for money damages relating to alleged violations of Texas constitutional rights." *McHenry v. Stinnett Police Dep't*, No. 2:13-cv-0228-J, 2014 WL 4771768, at \*10 (N.D. Tex. Aug. 8, 2014) (quoting *Hamilton v. Pechacek*, 319 S.W.3d 801, 812-13 (Tex. App.—Fort Worth 2010, no pet.). And although the Texas Constitution does contemplate claims for equitable relief, *Bouillion*, 896 S.W.2d at 149, and Lindsey requests an unspecified permanent injunction against Defendants, ECF No. 14 at 19, he fails, as discussed previously, to state any basis for that request. Moreover, if Lindsey attempts to anchor his request for injunctive relief in a speculative fear that he will be unlawfully detained sometime in the future, this fear does not pass muster as a showing of irreparable injury, and "[t]he equitable remedy is unavailable." *City of L.A. v. Lyons*, 461 U.S. 95, 111 (1983).

The Court therefore should dismiss Lindsey's claim under the Texas Constitution.

### H.    The Court should dismiss Lindsey's Due Process Claim.

Finally, Lindsey alleges that Defendants "[f]ail[ed] to provide [him] . . . due process of law." ECF No. 14 at 14. As discussed previously, sovereign immunity bars Lindsey's claims against the State of Texas and the AG, and his claims against Tarrant County Criminal Court No. 7 are not actionable because that court is a nonjural entity. That leaves eleven Defendants: Dallas Mayor Eric Johnson, the City of Dallas, the Dallas Marshals Office Association, Tarrant County, the City of North Richland Hills, Hailie Strong, Nector Escalante, Jose Bernal, Gavino O. Rongel, Berlinda Murray, and Maria C. Martinez. Liberally construing Lindsey's pleadings, the Court construes them to assert claims under 42 U.S.C. § 1983.

16

Section 1983 provides a cause of action for "the deprivation of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. There is no specific statute of limitations for § 1983 claims, and as a result the Supreme Court has instructed courts to look to the most analogous state statute of limitations. *Owens v. Okure*, 488 U.S. 235, 239-40 (1989). In Texas, this is the statutory two-year personal-injury limitations period. *Piotrowski v. City of Hous.*, 237 F.3d 567, 576 (5th Cir. 2001) (citing *Burrell v. Newsome*, 883 F.2d 416, 418 (5th Cir. 1989)); *see also* Tex. Civ. Prac. & Rem. Code § 16.003. The limitations period begins to run when the cause of action accrues, which is when the plaintiff knows or has sufficient information to know that he has suffered an injury. *Hitt v. Connell*, 301 F.3d 240, 246 (5th Cir. 2002).

Lindsey filed his original Complaint on December 9, 2024. ECF No. 1. Therefore, some acts or omissions of the Defendants must have occurred on or after December 9, 2022 for any § 1983 claim to be timely filed. Because Lindsey does not invoke any argument that the Court should equitably toll the limitations period, limitations would bar claims related to any events that occurred before December 9, 2022.

This thus eliminates the incidents Lindsey alleges occurred on February 9, 2022; February 14, 2022; and May 10, 2022 from consideration for a § 1983 claim. Consequently, the Court should dismiss Lindsey's § 1983 claims against Dallas Mayor Eric Johnson, the City of Dallas, the Dallas Marshals Office Association, Dallas police officers Jose Bernal and Gavino O. Rongel, Dallas municipal clerk Maria C. Martinez, and Dallas municipal court employee Berlinda Murray for failure to state a claim.

All that remains for consideration is the traffic stop and subsequent arrest executed in North Richland Hills on June 29, 2024 and Lindsey's following period of detainment, since those events

17

occurred within two years of the date Lindsey filed this suit. This leaves four Defendants: the City of North Richland Hills, North Richland Hills police officers Hailie Strong and Nector Escalante, and Tarrant County.

### 1. City of North Richland Hills

To plead municipal liability against the City of North Richland Hills under § 1983, Lindsey must allege that "(1) an official policy (2) promulgated by the municipal policymaker (3) was the moving force behind the violation of a constitutional right. *Peterson v. City of Fort Worth*, 588 F.3d 838, 847 (5th Cir. 2009); *see also Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691 (1978).

Beginning the analysis with the third element is apt since without an actual constitutional violation, any alleged municipal custom or policy becomes irrelevant. *City of L.A. v. Heller*, 475 U.S. 796, 799 (1986). Here, Lindsey's claim against the City of North Richland Hills arises from the conduct of two of its police officers during the June 29, 2024 traffic stop in which Strong and Escalante removed Lindsey from his vehicle, searched the car and his person, placed him under arrest, and removed his firearm from his person. *See* ECF No. 14 at 11-13. It also arises from the four days Lindsey spent in jail. *See id.* at 13 ("The Plaintiff was then unlawfully taken against his will into custody, held and trafficked for four days by both Defendants NORTH RICHLAND HILLS and TARRANT COUNTY.").

However, these facts do not rise to the level of a constitutional violation. If Strong and Escalante had probable cause to believe that Lindsey had been or was committing an illegal act, they could reasonably arrest him without violating his constitutional rights. *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004). And because of Lindsey's arrest, Strong and Escalante could lawfully search his person. *Chimel v. California*, 395 U.S. 752, 756 (1969). Further, "a detectable odor of

marijuana emanating from a vehicle provides probable cause for the search of a vehicle." *United States v. Lork*, 132 F. App'x 34, 35 (5th Cir. 2005). As previously noted, removing a firearm from Lindsey is not unconstitutional in the investigatory stop context. *United States v. Campbell*, 178 F.3d at 348-49. Nor can an arrestee's time in jail for a lawful arrest, without more, serve as a facial constitutional violation.

Lindsey has not pleaded plausible facts to show that Strong and Escalante lacked probable cause or other constitutional justification to stop his car, detain him, arrest him, search his car, or take his firearm. Nor has he alleged any other distinct unconstitutional conduct of the City of North Richland Hills. Therefore, he cannot maintain a § 1983 claim against the City of North Richland Hills, and the Court should dismiss this claim.

### 2.    Officers Hailie Strong and Nector Escalante

The Court likewise should dismiss Lindsey's § 1983 claims against Officers Strong and Escalante. "Section 1983 provides a claim against anyone who under color of any statute, ordinance, regulation, custom, or usage, of any State violates another's constitutional rights." *Whitley v. Hanna*, 726 F.3d 631, 638 (5th Cir. 2013). "To state a section 1983 claim, 'a plaintiff must (1) allege a violation of a right secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law.'" *James v. Tex. Collin Cty.*, 535 F.3d 365, 373 (5th Cir. 2008) (quoting *Moore v. Willis Indep. Sch. Dist.*, 233 F.3d 871, 874 (5th Cir. 2000)). But as discussed previously, Lindsey does not allege plausible facts to show either Strong or Escalante violated his constitutional rights. In his responses to the Court's Questionnaire, Lindsey cursorily alleges violations of the Fifth and Sixth Amendments, he does not state facts to support those allegations. *See* ECF No. 12 at 10.

The Court should dismiss his § 1983 claims against Strong and Escalante.

19

### 3.   Tarrant County

As with his municipal liability claims against the City of North Richland Hills, Lindsey must plead facts against Tarrant County to show an official policy, (2) promulgated by the municipal policymaker (3) that was the moving force behind the violation of a constitutional right. *Peterson*, 588 F.3d at 847; *see also Monell*, 436 U.S. at 691. Lindsey's claim against Tarrant County arises from his time in a Tarrant County jail. While there, he alleges "[he] was forced to strip naked, again searched, his clothes [were] taken, and [he] was deprived of proper nutrition." ECF No. 14 at 13. Lindsey asserts that he "was improperly fed for [his] diet does not consist of meat whatsoever," and that he was never "afforded clean drinking water [his] entire stay." ECF No. 12 at 11. Furthermore, he alleges that "TARRANT COUNTY . . . and members thereof[] also forced the Plaintiff to take an injection of an unknown substance against his will under coercion and duress while in custody. The injection broke the Plaintiff's skin causing swelling, discomfort and bleeding." ECF No. 14 at 13.

The Court should dismiss Lindsey's claims because he has not stated facts to show that Tarrant County (as opposed to any individuals allegedly responsible) instituted an official policy or custom that harmed him. *Piotrowski*, 237 F.3d at 579. "Official policy can arise in various forms. It usually exists in the form of written policy statements, ordinances, or regulations, but also may arise in the form of a widespread practice that is 'so common and well-settled as to constitute a custom that fairly represents municipal policy.'" *James v. Harris Cnty.*, 577 F.3d 612, 617 (5th Cir. 2009) (quoting *Piotrowski*, 237 F.3d at 579). Although a "single decision by a policy maker may, under certain circumstances, constitute a policy for which a municipality may be liable[,] . . . this single incident exception is extremely narrow and gives rise to

20

municipal liability only if the municipal actor is the final policymaker." *Valle v. City of Hous.*, 613 F.3d 536, 541-42 (5th Cir. 2010) (cleaned up).

Lindsey does not allege facts to satisfy this element. Even a liberal construction of Lindsey's pleadings does not identify any Tarrant County policies or customs, nor the identity of any official policymaker who instituted such a policy or custom, that harmed Lindsey. Because Lindsey does not satisfy the elements of a § 1983 claim of municipal liability against Tarrant County, the Court should dismiss his claims against the county.

### I.      Other Potential Claims

In Lindsey's response to the Court's Questionnaire (ECF No. 12), he occasionally mentions individuals he did not name as Defendants in his Amended Complaint and other unnamed persons who allegedly violated various Amendments in the Bill of Rights. *See, e.g.*, ECF No. 12 at 10. To the extent Lindsey attempts to add these individuals as Defendants, make allegations against them, or assert other violations of his constitutional rights not contemplated with greater factual detail across his pleadings, the Court should dismiss such claims for failure to state a claim.

### J.      Dismissal without leave to amend

It is a "well-established policy that the plaintiff be given every opportunity to state a claim." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). Nonetheless, courts may appropriately dismiss an action with prejudice if the court finds that the plaintiff has alleged his best case. *Jones*, 188 F.3d at 327. Lindsey brings various claims, almost all of which are non-actionable, non-existent, barred by sovereign or other immunity, or barred by the applicable statute of limitations. Where those claims are actionable and not barred, Lindsey's factual allegations are insufficient to survive dismissal. The Court previously offered Lindsey two opportunities to fortify his pleadings, and he was unable to do so. He responded to the Court's Questionnaire and amended

21

his complaint. *See* ECF Nos. 12, 14 The undersigned thus concludes that Lindsey has pleaded his best, though legally insufficient, case, and further amendment would be futile for each of his claims. Accordingly, the Court should dismiss Lindsey's Amended Complaint without leave to amend, except for his claims against the State of Texas and the AG, which the Court should dismiss without prejudice.

## IV.    CONCLUSION

For these reasons, the undersigned **RECOMMENDS** that Chief United States District Judge Reed O'Connor **DISMISS** Lindsey's claims against the State of Texas and Texas Attorney General Warren Kenneth Paxton, Jr. **WITHOUT PREJUDICE** for lack of subject matter jurisdiction, and **DISMISS** the balance of Lindsey's Amended Complaint **WITH PREJUDICE** for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii)-(iii).

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1)(B) and Fed. R. Civ. P. 72(b)(1). To be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district 6 court, except upon grounds of plain error. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th

Cir. 1996) (en banc), *modified by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections to 14 days).

**SIGNED** on February 25, 2026.

_____
Hal R. Ray, Jr.
UNITED STATES MAGISTRATE JUDGE

23